HARRY F. HIX et al. *vs.* THE EASTERN STEAMSHIP COMPANY.

Cumberland.    Opinion December 7, 1910.

*Common Carriers.    Contract of Shipment.    Limited Liability.    Acceptance of Bill of Lading.    Principal and Agent.    Authority of Agent.*

A carrier, in the absence of statute to the contrary, may, by special contract, limit its liability, at least, against all risks but its own negligence or misconduct.

Where a shipper for three years had been receiving bills of lading in the same form and terms as one in question, his knowledge of its terms, in the absence of fraud of the carrier, must be conclusively presumed, and he can not escape the presumption by not reading it.

Where the employee of shippers of horses had supervised several shipments for his employers and signed bills of lading in their name, and had given the duplicate bills to one of them, who had never repudiated the agency or questioned his authority to sign, the agent was held out to the carrier as authorized both to deliver the horses and to sign the bills, and could sign a bill of lading limiting the carrier's liability without express instructions, and where one of his employers received a duplicate bill so signed, and did not repudiate it, but retained it in his possession, he ratified the agent's act and was bound thereby.

On motion and exceptions by defendant.    Exceptions sustained.

Action of assumpsit brought in the Superior Court, Cumberland County, to recover the sum of $148.00 for injuries alleged to have been sustained by the plaintiffs, by reason of the defendant's failure to transport, in a proper manner, safely and securely, one bay mare, which the plaintiffs delivered to the defendant at Boothbay Harbor, for transportation over one of the defendant's steamers to Portland.    Plea, the general issue with brief statement alleging that at the time of the delivery of the horses by the plaintiffs to the defendant to be carried on its steamer to Portland, the plaintiffs "entered into a special contract with the defendant respecting the terms under which the carriage of said horses was to be performed," etc.

Verdict for plaintiffs for $168.63. The defendant filed a general motion for a new trial and also excepted to several rulings made during the trial. Motion not considered.

The case is stated in the opinion.

*Williamson & Burleigh*, for plaintiffs.

*Benjamin Thompson*, for defendant.

SITTING: EMERY, C. J., SAVAGE, PEABODY, SPEAR, CORNISH, KING, JJ.

CORNISH, J. This case is before the Law Court on motion and exceptions by defendant but it is only necessary to consider the exceptions.

On May 27, 1907, the plaintiff shipped from Boothbay Harbor to Portland on one of the defendant's line of steamers, two horses, one of which was injured in transit. The horses were delivered to the defendant, not by the plaintiffs in person but by one Reed, their employee, who at the time of delivery joined with the agent of the company in signing duplicate bills of lading, in the form "Eastern S. S. Co. by R. A. Lewis, Agent, and Hix & Clark by A. B. Reed." One of these bills was retained by the purser of the steamer and the other was taken by Reed and delivered to Mr. Hix. This bill of lading was designed to constitute a special contract between shipper and carrier limiting the responsibility of the carrier far within the bounds of its common law liability as an insurer, and imposing certain stipulated duties and obligations upon the shipper. The extent and scope of these modifications it is unnecessary to consider in this opinion any further than to say that they apparently were not designed to relieve the company from the results of its own negligence or that of its employees.

The plaintiffs contend that they are not bound by the contract signed by Reed as he had no authority to sign it in their name, that they never assented to or accepted its terms and that therefore the common law liability of the defendant remained unmodified. The presiding Justice against the written request of the defendant for instructions to the contrary, left the question of the existence or

non-existence of the special contract to the jury as a matter of fact, and then instructed them fully as to the common law liability of the defendant in the absence of any modifying contract, and its liability for want of due care merely if such contract had been made. The jury found for the plaintiff generally, and it is therefore impossible to ascertain whether the verdict is based upon a finding that the plaintiffs were not bound by the contract but could recover as at common law, or that they were bound by the contract but could recover by reason of the defendant's negligence. This was error. The jury should have been instructed as requested by the defendant "that the evidence in the case shows as a matter of law, that a contract was made between the plaintiffs and the defendant, by virtue of which the defendant's liability as carrier was limited," and then the case should have been submitted to the jury on the question of defendant's negligence.

No principle of law is now more firmly established than that a common carrier in the absence of any statute to the contrary, may by special contract limit its liability, at least against all risks but its own negligence or misconduct. *Fillebrown* v. *G. T. Ry. Co.*, 55 Maine, 462; *Morse* v. *Railway Co.*, 97 Maine, 77; *Gerry* v. *Amer. Exp. Co.*, 100 Maine, 519.

A careful examination of the undisputed facts in this case leads to the indisputable conclusion that a special contract was entered into between these parties and therefore the question of its existence or non-existence was one of law for the court and not of fact for the jury, a situation more likely to arise in commercial transactions than in cases of negligence. *Lasky* v. *R. R. Co.*, 83 Maine, 461-470; *Morey* v. *Milliken*, 86 Maine, 464. Mr. Hix, the active member of the plaintiff firm had been a dealer in horses at Rockland for fifteen or sixteen years with a sales stable at Boothbay Harbor in 1907. During the previous six or seven years he had made frequent shipments over the defendant's steamers, and in 1906 alone, had made five or six, with the number of horses each time varying from six to fourteen. The most of these shipments had been made by him personally, a few perhaps by his agents or employees. At every shipment during all these years a bill of lading in precisely

the same form and terms as the one in this case had been executed and accepted. It was his voucher for the property delivered to the carrier as well as the contract of carriage. His knowledge of its terms under such circumstances and in the absence of fraud on the part of the carrier, must be conclusively presumed. It was not within his power to escape this presumption by saying as he did at the trial, "They give me a bill of lading; I don't know as I paid much attention to them or any need to . . . I don't know as I ever read them through." The law does not permit either party to a written contract to so lightly evade its effect. As the Supreme Court of Massachusetts says in *Grace* v. *Adams*, 100 Mass. 505-507, "The receipt was delivered to the plaintiff as the contract of the defendants; it is in proper form; and the terms and conditions are expressed in the body of it in a way not calculated to escape attention. The acceptance of it by the plaintiff, at the time of the delivery of his package, without notice of his dissent from its terms, authorized the defendants to infer assent by the plaintiff. It was his only voucher and evidence against the defendants. It is not claimed that he did not know, when he took it, that it was a shipping contract or bill of lading. It was his duty to read it. The law presumes, in the absence of fraud or imposition, that he did read it, or was otherwise informed of its contents, and was willing to assent to its terms without reading it. Any other rule would fail to conform to the experience of all men. Written contracts are intended to preserve the exact terms of the obligations assumed, so that they may not be subject to the chances of a want of recollection or an intentional misstatement. The defendants have a right to this protection, and are not to be deprived of it by the wilful or negligent omission of the plaintiff to read the paper."

In *Gerry* v. *Express Co.*, 100 Maine, 519, the same strict but healthy rule is adhered to in these words: "They cannot be permitted to say that, by their own inattention, they did not read the terms and conditions and thereby impose upon the defendant a greater liability than that expressed in the contract." The long and uniform course of business between the parties in the case at bar brings it clearly within the doctrine of these cases.

Nor is there force in the plaintiffs' contention that the bill of lading was signed by Reed without express authority from them. Express authority was unnecessary. Reed was their employee and agent. He had made several prior shipments for them, had signed bills of lading in their name, had given the duplicate bills to Mr. Hix, and the latter had neither repudiated his agency nor questioned his authority to sign. He therefore held out Reed to this defendant, as authorized both to deliver the horses and to sign the bills. On the day in question Hix wrote two tags and asked Reed to take the two horses to the boat but, as he says, did not give him any express instructions to sign any contract limiting liability. Such instructions were unnecessary. The former course of business between the parties had impliedly given Reed that authority and he proceeded to exercise it as before. He delivered the horses, signed the bill and brought back the duplicate so signed, to Hix who did not reject or repudiate it, but accepted it and retained it in his own possession or that of his attorney even down to the time it was produced as an exhibit at the trial. He thereby ratified and confirmed the acts of his agent and denial of agency and authority under such circumstances is futile, *Squire* v. *Railroad Co.*, 98 Mass. 247 ; *M. K. & T. Ry. Co.* v. *Patrick*, 144 Fed. Rep. 632.

The existence of the special modifying contract being thus indisputably established, the ruling of the presiding Judge in submitting that question to the jury was erroneous, as it gave the jury an opportunity to base the verdict for the plaintiff upon an untenable ground.

The entry must therefore be,

*Exceptions sustained.*